UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
JOSEPH ZAPPIA, Individually and on Behalf of All Others Similarly Situated

                Plaintiff,

     v.

FIESTA RESTAURANT GROUP, INC., STACEY RAUCH, NICHOLAS DARAVIRAS, SHERRILL KAPLAN, ANDREW RECHTSCHAFFEN, NICHOLAS P. SHEPHERD, NIRMAL K. TRIPATHY, and PAUL TWOHIG,

                Defendants.

Case No. 23-cv-08524

**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS AND DELAWAR STATE LAW**

<u>**CLASS ACTION**</u>

<u>**JURY TRIAL DEMANDED**</u>

Plaintiff Joseph Zappia ("Plaintiff"), individually and on behalf of all others similarly situated, by the undersigned attorneys, alleges as follows based (i) upon personal knowledge with respect to Plaintiff's own acts, and (ii) upon information and belief as to all other matters based on the investigation conducted by Plaintiff's attorneys, which included, among other things, a review of relevant U.S. Securities and Exchange Commission ("SEC") filings, and other publicly available information.

**NATURE OF THE ACTION**

1. This action is brought by Plaintiff individually and on behalf of the Class (as defined below) against Fiesta Restaurant Group, Inc. ("Fiesta" or the "Company") and the members of the Company's Board ("Board") for (i) violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a) and § 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, 17 C.F.R. §

240.14a-9(a) ("Rule 14a-9"), and (ii) breach of fiduciary duties under Delaware law. Plaintiff's claims arise in connection with the solicitation of public stockholders of Fiesta to vote in favor of a merger transaction ("Merger") pursuant to which affiliates of Garnett Station Partners, LLC ("GSP") will acquire all of the outstanding shares of common stock of Fiesta from Fiesta public stockholders for $8.50 per share in cash ("Merger Consideration"), and Fiesta will merge into an affiliate of GSP.

2.  On August 7, 2023, Fiesta and GSP announced the Merger.

3.  On September 22, 2023, Defendants authorized the filing of a false and misleading definitive proxy on Schedule 14A ("Proxy") with the SEC, in (i) violation of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9, and (ii) breach of fiduciary duties under Delaware law, with the aim of soliciting Fiesta stockholders to vote for the Merger ("Stockholder Vote") at a special meeting ("Special Meeting") of Fiesta stockholders to be held on October 24, 2023. The Proxy advises Fiesta stockholders that "[y]our vote is very important, regardless of the number of shares of Common Stock that you own."

4.  As detailed below, the Proxy contains material omissions that render the Proxy false and misleading in violation of (i) the above-referenced Exchange Act provisions and Rule 14a-9, and (ii) Delaware law.

5.  The violations referenced above must be cured in advance of the Stockholder Vote to enable Fiesta stockholders to cast informed votes with respect to the Merger. Therefore, Plaintiff seeks to enjoin the Defendant from taking any further steps to consummate the Merger and schedule the Stockholder Vote, until such violations are cured. Alternatively, if the Merger is consummated, Plaintiff reserves the right to recover damages suffered by Plaintiff and similarly-situated investors as a result of such violations.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act pursuant to Section 57 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction). The Court has subject matter jurisdiction over the claims for breach of fiduciary duty under Delaware law under 28 U.S.C. § 1367 (providing supplemental jurisdiction over all other claims that are related to claims in the action within the Court's original jurisdiction).

7. This Court has personal jurisdiction over each of the Defendants because each defendant has sufficient minimum contacts with the United States so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. *See Moon Joo Yu v. Premiere Power LLC*, No. 14 CIV. 7588 KPF, 2015 WL 4629495, at *5 (S.D.N.Y. Aug. 4, 2015) (because Exchange Act provides for nationwide service of process, and Defendant resides within the United States, and conducts business within the United States, he should reasonably anticipate being hauled into court in the United States, and Court's exercise of personal jurisdiction over Defendant with respect to Plaintiffs' securities fraud claim is proper); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *23 (S.D.N.Y. Oct. 20, 2015) ("[w]hen the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction and nationwide service of process . . . Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state.").

8. Venue is proper under 28 U.S.C. § 1391(b) because Defendants transact business in this District. In particular, the Company's common stock trades under the ticker "FRGI" on Nasdaq, which is headquartered in this District, and the false and misleading Proxy was filed with

the SEC, which has a regional office in this District. *See Mariash v. Morrill*, 496 F.2d 1138, 1144 (2d Cir. 1974) (venue appropriate in the Southern District of New York where an act or transaction constituting the alleged violation occurred in the Southern District of New York); *United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (venue in tender offer fraud prosecution appropriate in District).

## PARTIES

9. Plaintiff is, and has been at all relevant times, a stockholder of Fiesta common stock.

10. Defendant Fiesta is a Delaware corporation with its principal executive offices located at 14800 Landmark Boulevard, Suite 500, Dallas, Texas 75254. Fiesta owns, operates and franchises the restaurant brand Pollo Tropical, which features fire-grilled and crispy citrus marinated chicken and other freshly prepared menu items.

11. Defendant Stacey Rauch has served as a member of the Board at all relevant times, and has served as non-executive Chairman of the Board since February 2017.

12. Defendant Nicholas Daraviras has served as a member of the Board at all relevant times. Daraviras has been a Managing Director of Jefferies Financial Group Inc. ("Jefferies Financial") since 2014. As of September 6, 2023, Jefferies Financial owned 20.1% of Fiesta's common stock. Jefferies Financial is publicly traded on the NYSE under the ticker JEF.

13. Defendant Sherrill Kaplan has served as a member of the Board at all relevant times.

14. Defendant Andrew Rechtschaffen has served as a member of the Board at all relevant times. Rechtschaffen is a principal of AREX Capital Management, L.P. ("AREX"). As of September 6, 2023, AREX owned 9.6% of Fiesta's common stock.

15. Defendant Nicholas P. Shepherd has served as a member of the Board at all relevant times.

16. Defendant Nirmal K. Tripathy has served as a member of the Board at all relevant times.

17. Defendant Paul E. Twohig has served as a member of the Board at all relevant times.

18. Defendants identified in paragraphs 11 to 17 are collectively referred to herein as the "Individual Defendants," and together with Fiesta, collectively, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background to the Merger**

19. On October 1, 2021, the Board formed a special committee ("Special Committee") to explore strategic alternatives. The Special Committee was chaired by Defendant Rauch and its other members consisted of Defendants Twohig, Shepherd and Rechtschaffen.

20. During October 2021, the Special Committee considered several financial advisors, and ultimately recommended to Fiesta that it engage Jefferies LLC—an affiliate of Jefferies Financial—as Fiesta's financial advisor. On October 21, 2021, Fiesta formally retained Jefferies LLC. In the engagement letter, Fiesta (i) acknowledged that Defendant Daraviras was employed by Jefferies LLC, and that Jefferies Financial held, as of October 21, 2021, approximately 19.89%, of the outstanding common stock of Fiesta, and (ii) waived any conflict of interest that Jefferies LLC may have as a result. The Proxy, however, does not disclose the compensation paid to Jefferies LLC for its services in connection with Fiesta's strategic review process, and whether such compensation was contingent on consummation of a transaction.

21. Beginning in January 2022, following discussions with the Special Committee

5

regarding potential counterparties to a strategic transaction, Jefferies LLC reached out to a total of 13 potential strategic counterparties and 38 potential financial sponsor counterparties. As a result of Jefferies LLC's outreach, Fiesta received five preliminary indications of interest from various counterparties (designated in the Proxy as Party A, Party B, Party C, Party D, and Party E). Subsequently, as per the narrative in the Proxy, throughout 2022 and 2023, Jefferies LLC (i) participated in multiple meetings with the Special Committee and other Fiesta advisors to discuss proposals to acquire Fiesta submitted by various potential counterparties (including GSP), and (ii) engaged in numerous discussions with various potential counterparties (including GSP) and reported back to the Special Committee concerning the substance of those discussions.

22. Specifically, from April 2022 through August 2022, Jefferies LLC engaged with Parties A, B, C, D and E, and met with the Special Committee concerning the proposals and due diligence of these potential counterparties. Beginning in June 2022, Jefferies LLC also engaged with additional counterparties, including two counterparties designated Party F and Party G, and met with the Special Committee concerning these counterparties. Then beginning in the fourth quarter of 2022, Jefferies LLC began engaging with GSP as GSP conducted due diligence on Fiesta.

23. At the same time, on May 2, 2022, the Special Committee met with representatives of Fiesta management, Fiesta's then legal advisor, and Jefferies LLC, to discuss, *inter alia*, the required lead time to engage an additional financial advisor other than Jefferies LLC to provide a fairness opinion to the Special Committee in connection with any potential transaction.

24. On May 19, 2022, the Special Committee engaged Houlihan Lokey to act as an additional financial advisor to the Special Committee to prepare a fairness opinion ("Fairness Opinion") with respect to any proposed transaction. Houlihan Lokey was ultimately paid $600,000

for providing a Fairness Opinion.

25. On January 12, 2023, GSP submitted a non-binding offer at a price per share range of $8.00 to $8.25 in cash to acquire Fiesta.

26. On January 18, 2023, Jefferies LLC communicated to GSP's financial advisor that the Special Committee would be prepared to recommend a transaction at a price of $9.00 per share in cash.

27. On June 14, 2023, after additional due diligence and meetings, GSP made an updated offer to acquire Fiesta at a purchase price equal to $8.25 per share in cash. GSP's financial advisor subsequently indicated to Jefferies LLC that GSP may be able to increase the proposed per share purchase price, but only by a de minimis amount.

28. On July 12, 2023, following additional discussions between Jefferies LLC and GSP, GSP made an updated offer to acquire Fiesta at a price equal to $8.50 per share in cash and indicated that this was GSP's best and final offer. Later that day, the Special Committee held a meeting to discuss GSP's proposal. Representatives of Jefferies LLC conveyed its view that $8.50 was indeed GSP's best and final offer.

29. On July 18, 2023, the Board met to discuss GSP's updated offer of $8.50 per share in cash. At the request of the Special Committee, Jefferies LLC reviewed with the Board the Special Committee's multi-year strategic review process that had culminated in GSP's updated offer. Jefferies LLC then reviewed with the Board a list of each potential counterparty that Jefferies LLC had contacted throughout the strategic review process, identified which counterparties had entered into non-disclosure agreements with Fiesta, and which counterparties had expressed any interest in acquiring Fiesta. Jefferies LLC also reviewed with the Board a preliminary financial analysis of GSP's updated offer.

30. After meeting with the Board, Jefferies LLC advised GSP that both the Special Committee and the Board had instructed the Company's advisors to move forward on the basis of the $8.50 per share in cash proposal and finalize the definitive documentation.

31. On August 3, 2023, each of the Special Committee and the Board held a meeting, at which certain representatives of Fiesta management, Houlihan Lokey, Jefferies LLC, and Fiesta's legal advisor (Gibson Dunn) were present. Jefferies LLC and Gibson Dunn indicated to the Special Committee and the Board, respectively, that the material transaction terms had been agreed, and that the parties were well positioned to finalize the merger agreement in the coming days, and subject to the Special Committee and Board's final approvals, execute the agreement and announce the transaction prior to the commencing of trading on Monday, August 7. Houlihan Lokey then reviewed with the Special Committee and the Board (at the request of the Special Committee) its preliminary financial analyses with respect to Fiesta and the proposed transaction with GSP.

32. On August 5, 2023, after the material terms of a transaction with GSP had been agreed upon, Houlihan Lokey shared its Fairness Opinion with the Special Committee concluding that the Merger Consideration was fair to Fiesta stockholders. Thereafter, the Special Committee recommended that the Board approve the Merger, and the Board thereafter approved the Merger and resolved to recommend to Fiesta stockholders to approve the Merger.

33. On August 6, 2023, Fiesta and GSP signed the agreement governing the Merger ("Merger Agreement").

34. On August 7, 2023, Fiesta and GSP jointly announced the Merger in a press release. The press release advised that Jefferies LLC acted as lead financial advisor to Fiesta in connection with the Merger.

35. On August 10, 2023, in accordance with the 30-daty go-shop provisions in the Merger Agreement, Jefferies LLC began contacting parties about their interest in participating in the go-shop process. During the go-shop period, Jefferies LLC contacted 39 potential strategic acquirors (including the following counterparties that had previously participated in the strategic review process: Party A, Party B, Party C, Party D, Party E, Party F, Party G, and Party H). Of such contacted parties, two potential strategic acquirors executed acceptable confidentiality agreements. During the go-shop period, Fiesta provided confidential information in response to due diligence inquiries made by these two potential strategic acquirors.

36. On August 23, 2023, the Special Committee held a meeting, at which Jefferies LLC provided an update to the Special Committee on the outreach conducted during the go-shop period, and the status of the two potential counterparties' diligence processes. At 12:01 a.m. (New York City time) on September 5, 2023, the go-shop period expired without any party submitting a proposal to acquire Fiesta.

**The Proxy Contains Material Omissions Concerning the**
**Compensation Paid to Jefferies LLC**

37. Because of the central role played by investment banks advising target companies with respect to the evaluation, exploration, selection, and implementation of strategic alternatives, courts require full disclosure of investment banker compensation. This rationale for such disclosure is particularly strong where the investment bank is an affiliate of the principal stockholder of the target, and thus the compensation paid to the investment bank represents a source of additional consideration to the principal stockholder in connection with a transaction not shared with other stockholders.

38. Here, even though Jefferies Financial owns approximately 20% of the common stock of Fiesta, the Special Committee recommended that the Company retain an affiliate of

Jefferies Financial—Jefferies LLC—to serve as financial advisor in connection with the Company's strategic review process. Thereafter, Jefferies LLC actively participated in the sales process, including meeting with (i) the Special Committee and the Board to discuss proposals submitted by various potential counterparties (including GSP), and (ii) various potential counterparties to discuss their proposals (including GSP). Yet, for undisclosed reasons, the Special Committee engaged Houlihan Lokey—rather than Jefferies LLC—to provide the Fairness Opinion.

39. Other providing the Fairness Opinion, Houlihan Lokey did not provide any other services to the Special Committee, the Board or the Company. Indeed, until August 3, 2023—by which date the material terms of the Merger had already been agreed upon—Houlihan Lokey did not participate in any meetings with the Special Committee or the Board and the Company's other advisors to discuss the proposed Merger.

40. Notwithstanding that Jefferies LCC actively participated in the sales process—and in contrast, Houlihan Lokey's participation in the sales process was limited to providing the Fairness Opinion—the Proxy only discloses the compensation paid to Houlihan Lokey (a non-contingent fee of $600,000), but does not disclose the compensation paid to Jefferies LLC, or the extent to which such compensation was contingent on the consummation of the Merger.

41. The Merger Agreement makes clear that compensation was paid to Jefferies LLC, defining the term "Company Financial Advisors" to mean Jefferies LLC and Houlihan Lokey, and stating in Section 4.23 (titled "Brokers' Fees):

> ***Except for the Company Financial Advisors***, no Person has acted, directly or indirectly, as a broker, finder or financial advisor for the Company in connection with the transactions contemplated by this Agreement and ***no such Person is entitled to any fee or commission or like payment from the Company in respect thereof***. A copy of the engagement letters between the Company and the Company Financial Advisors, as in effect on the date hereof, has been made available to

Parent, which copies are true and complete subject to redactions of the portions of such letter *relating to the calculation of the fee payable to the Company Financial Advisors*. *The Company has separately provided to Parent its good faith calculation of the approximate amount of the fees that will be payable to the Company Financial Advisors as a result of the Merger*.

42. The failure to disclose the compensation paid to Jefferies LLC is a material omission because Jefferies LLC's parent—Jefferies Financial—owns approximately 20% of the Company. Reasonable Fiesta stockholders would consider it important to know the amount of the additional consideration—beyond that being paid to other Fiesta stockholders—that Jefferies Financial is receiving in connection with the Merger in the form of fees paid to Jefferies LLC (which is identified as Jefferies Financial's "largest subsidiary" on page 3 of the 2022 Form 10-K filed by Jefferies Financial with the SEC on January 27, 2023). Such fees represent unique consideration extracted by Jefferies Financial not shared with other Fiesta stockholders.

43. In particular, the amount of compensation paid to Jefferies LLC certainly could have influenced Jefferies LLC to negotiate against GSP less aggressively than it otherwise might have in order to ensure an agreement was reached since a lower deal price for Jefferies Financial could be offset by the compensation paid to Jefferies LLC. In other words, from the standpoint of Jefferies Financial, a deal at a lower price was better than negotiating too aggressively and ending up with no deal at all since the fee paid to Jefferies LLC would offset a lower price. Indeed, as noted above, at a pivotal moment on July 12, 2023, Jefferies LLC shared its view with the Special Committee that $8.50 per share was indeed GSP's best and final offer (thus demonstrating Jefferies LLC's influence in connection with price negotiations).

44. Further, the failure to disclose the compensation paid to Jefferies LLC renders misleading the section of the Proxy entitled "Interests of Fiesta's Directors and Executive Officers in the Merger," which purports to identify all of the interests that Fiesta's directors and executive

11

officers have in the Merger "that are in addition to, or different from, the interests of other stockholders." Yet, that section of the Proxy fails to disclose the compensation paid to Jefferies LLC even though Defendant Daraviras—a member of the Board that issued the Proxy to solicit Fiesta stockholders—is employed by Jefferies LLC and is a Managing Director of Jefferies Financial, and thus had an interest in approving a transaction that paid additional compensation to Jefferies LLC.

45. Based on the foregoing, Defendants must file a supplemental disclosure with the SEC at least five (5) days in advance of the Stockholder Vote disclosing the compensation paid to Jefferies LLC, and the extent to which such compensation was contingent on consummation of the Merger.

## CLASS ACTION ALLEGATIONS

46. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of a class ("Class") consisting of all individuals and entities that were Fiesta stockholders of record as of the close of business on September 19, 2023 (the record date in the Proxy) ("Class Period"). Excluded from the Class are: (i) Defendants and members of their immediate families; (ii) the officers and directors of the Company and members of their immediate families; and (iii) any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

47. Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

48. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, the Proxy discloses that 26,189,111 Fiesta common shares were issued and outstanding as of September 6, 2023.

49. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the federal securities laws and Delaware law, as specified above.

50. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests antagonistic to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in securities class action litigation of this nature.

51. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*, whether (i) Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder; (ii) the Individual Defendants have violated Section 20(a) of the Exchange Act; (iii) the Individual Defendants have breached their fiduciary duties under Delaware law; and (iv) Plaintiff and the other members of the Class are entitled to injunctive relief.

52. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

53. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants**
**for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

54. Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein.

55. SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any Proxy, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

56. Defendants disseminated the false and misleading Proxy, which made false and misleading statements, and failed to disclose material facts necessary in order to make statements made therein, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

57. By virtue of their positions within the Company, and/or roles in the process of preparing, reviewing, and/or disseminating the Proxy, the Individual Defendants were aware of their duty not to make false and misleading statements in the Proxy, and not to omit material facts from the Proxy necessary to make statements made therein—in light of the circumstances under which they were made—not misleading.

58. Yet, as specified above, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, Defendants (i) made untrue statements of material fact in the Proxy, and/or (ii) omitted

14

material facts from the Proxy necessary to make statements therein— in light of the circumstances under which they were made—not misleading, in order to induce Fiesta stockholders to vote in favor of the Merger. Defendants were at least negligent in filing the Proxy with these material misrepresentations and omissions.

59. The material misrepresentations and omissions in the Proxy specified above are material insofar as there is a substantial likelihood that a reasonable Fiesta stockholder would view correction of the misrepresentations, and disclosure of the omitted facts specified above as significantly altering the "total mix" of information made available to Fiesta stockholders.

60. The Proxy explains that the "affirmative vote of the holders of a majority of the outstanding Fiesta ordinary shares present virtually or represented by proxy at the Special Meeting and entitled to vote thereon is required to adopt the Merger Agreement." The Proxy soliciting the votes of Chase stockholders is thus an essential link in the accomplishment of the Merger, and transaction causation is established.

61. Because of the material misrepresentations and omissions in the Proxy specified above, Plaintiff and other Fiesta stockholders are threatened with irreparable harm insofar as Plaintiff and other Fiesta stockholders will be deprived of their entitlement to cast fully informed votes with respect to the Merger if such material misrepresentations and omissions are not corrected before the Stockholder Vote. Therefore, injunctive relief is appropriate.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

62. Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein.

63. The Individual Defendants acted as controlling persons of Fiesta within the

meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and/or directors of Fiesta, and participation in, and/or awareness of Fiesta's operations, and/or intimate knowledge of the contents of the Proxy filed with the SEC, they had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of Fiesta with respect to the Proxy, including the content and dissemination of the various statements in the Proxy that Plaintiff contends are materially false and misleading, and the omissions of material fact specified above.

64. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65. Each of the Individual Defendants had direct and supervisory involvement in the negotiation of the Merger, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised same.

66. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered in connection with such negotiation, review and approval.

67. By virtue of the foregoing, the Individual Defendants had the ability to exercise control over and did control a person or persons who violated Section 14(a), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of

Individual Defendants' conduct, Plaintiff and other Fiesta stockholders will be irreparably harmed.

68. Plaintiff and other Fiesta stockholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and other Fiesta stockholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict upon Plaintiff and other Fiesta stockholders in terms of casting fully informed votes with respect to the Merger.

## COUNT III

### Against the Individual Defendants for
### Breach of Fiduciary Duty Under Delaware Law

69. Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein.

70. The Individual Defendants, as directors of a Delaware corporation, owed Plaintiff and other Fiesta stockholders fiduciary duties of due care, good faith, candor, and loyalty under Delaware law.

71. The Individual Defendants breached their fiduciary duties under Delaware law by omitting material facts from the Proxy that were necessary for Plaintiff and other Fiesta stockholders to know in order to cast fully informed votes with respect to the Merger, as detailed above.

72. The facts omitted from the Proxy as detailed above were material because there is a substantial likelihood that a reasonable Fiesta stockholder would have viewed disclosure of such facts as having significantly altered the 'total mix' of information made available to them.

73. As a result of the Individual Defendants' breaches of fiduciary duty, Plaintiff and other Fiesta stockholders will be harmed by being deprived of their right to cast fully informed votes with respect to the Merger.

74. Plaintiff and other Fiesta Stockholders have no adequate remedy at law, and as a result of the Individual Defendants' breaches of fiduciary duty, are threatened with irreparable harm by virtue of being deprived of their entitlement to cast fully informed votes with respect to the Merger, as more fully explained above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, employees and all other agents and persons acting in concert with them from proceeding with and holding the Stockholder Vote and consummating the Merger, unless and until Defendants disclose and disseminate to Fiesta stockholders the material information specified above that has been omitted from the Proxy, and correct any false and misleading statements in the Proxy;

B. Finding Defendants liable for violating Sections 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

C. Finding the Individual Defendants liable for violating Section 20(a) of the Exchange Act, and breaching their fiduciary duties under Delaware law;

D. Rescinding, to the extent already implemented, the Merger Agreement or any of the transactions contemplated thereby, or granting Plaintiff rescissory damages;

E. Directing Defendants to account to Plaintiff for all damages suffered as a result of their misconduct;

F. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and expenses; and

G. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: September 27, 2023　　　　　　　　**WOHL & FRUCHTER LLP**

By:/s *Joshua E. Fruchter*
Joshua E. Fruchter (JF2970)
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Tel: (845) 290-6818
Fax: (718) 504-3773
Email: jfruchter@wohlfruchter.com

*Attorneys for Plaintiff*